# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JERRY NEVES, JR.,

Petitioner,

v.

MATTHEW CATE, Secretary,

Respondent.

_______________________________________/

1:10-CV-00239 BAM HC

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT

ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is represented in this action by Roger T. Nuttall, Esq. The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c).

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction by jury trial on July 5, 2006, of felony assault with a firearm (Cal. Penal Code § 245(a)(2)), and possession of a firearm by a felon (Cal. Penal Code § 12021(a)(1)). (CT[1] 411.) The weapon enhancement was also determined to be true. (CT 411.) In a bifurcated trial, the jury determined that Petitioner had committed the offenses in association with a criminal street gang (Cal. Penal

[1] "CT" refers to the Clerk's Transcript on Appeal.

Code § 186.22(b)(1)). (CT 269-270.) On May 18, 2007, Petitioner was sentenced to serve a total determinate term of twenty-six years in state prison. (CT 411.)

Petitioner filed a timely notice of appeal. On November 21, 2008, the California Court of Appeal, Fifth Appellate District ("Fifth DCA"), affirmed Petitioner's judgment in a reasoned decision. (See Lodged Doc. No. 4.) On December 31, 2008, Petitioner filed a petition for review in the California Supreme Court. (See Lodged Doc. No. 5.) On February 11, 2009, the petition was summarily denied. (See Lodged Doc. No. 6.)

Petitioner filed the instant federal habeas petition in this Court on February 11, 2010, presenting the following two claims for relief: 1) He alleges he received ineffective assistance of counsel due to counsel's failure to oppose the prosecution's motion to consolidate; and 2) He contends he received ineffective assistance of counsel when counsel failed to move for severance in the bifurcated trial on the gang enhancements. On June 17, 2010, Respondent filed an answer to the petition. Petitioner did not timely file a traverse.

**STATEMENT OF FACTS**[2]

[A. May 22, 2003, incident: Counts 7 and 8 (Reynaldo Salcido Rubio only)]

On May 22, 2003, Jose Breceda [FN1] had an argument with one of [Reynaldo Salcido] Rubio's relatives over a Bulldog jersey. Three days later while Jose and his brother Sergio Breceda were installing a stereo in Sergio's car, Rubio arrived, climbed out of the passenger side of a car, and pulled out a semiautomatic handgun as he walked toward Jose. Rubio stated, "All right. Let's handle business. I've got my piece." Rubio approached Jose, chambered a round, and hit Jose in the back of the head with the gun. The gun went off.

FN1. We will refer to Jose Breceda and Sergio Breceda by their first names, not out of disrespect but to ease the reader's task.

When Sergio came around the car to see what was going on, Rubio pointed the gun at both Jose and Sergio. Rubio went to his car, still pointing the gun at Jose, climbed in and left.

[B. July 7, 2003, incident: Count 6 (Rubio only)]

On July 7, 2003, Roger Clark was engaged in a fistfight with another person when Rubio punched Clark in the mouth, causing Clark to lose a tooth and lose consciousness.

---

[2] The Fifth DCA's summary of the facts in its November 21, 2008, opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Petitioner does not present clear and convincing evidence to the contrary; thus, the Court adopts the factual recitations set forth by the Fifth DCA.

[C. September 9, 2003, incident: Counts 1, 2, 4 (Petitioner) and Counts 3, 4, 5 (Rubio)]

On September 9, 2003, Luis Rios [FN2] was at a home in Pinedale. Around dusk, Michael Rios arrived and he and Luis headed to a market to get some beer. As they were walking, three people, including Rubio and [Petitioner], approached them. [Petitioner] pulled out a gun and pointed it at Luis and Michael. When Michael asked what [Petitioner] was going to do, [Petitioner] replied that he was going to kill Michael.

FN2. We will refer to Luis Rios and Michael Rios by their first names, not out of disrespect but to ease the reader's task.

Michael and [Petitioner] struggled over the gun. When Luis went to help Michael, Rubio pulled a gun on Luis. Rubio hit Michael on the back of the head with the gun. [Petitioner] fired a shot at Michael that grazed the side of Michael's head.

....

[D. Bifurcated trial on gang enhancements with respect to September, 2003 incident]

At trial, California Highway Patrol Investigator Anthony Gates testified as an expert on gangs. Gates had been assigned to the Multi-Agency Gang Enforcement Consortium for over five years. Gates testified that the Bulldogs were the largest gang in Fresno County, with over a thousand members. The Bulldogs wear the color red and anything associated with Fresno State athletics. One subset of the Bulldogs is the Pinedale Bulldogs or the Vario Pinedale Norte. The Pinedale Bulldogs subset has approximately 40 to 50 validated members and claims the area bordered by Blackstone, Palm, Nees, and Herndon. The Pinedale Bulldogs' primary activities include narcotics sales, vehicle theft, and assaults with deadly weapons.

Gates opined that Rubio was a Pinedale Bulldog based upon seven self-admissions, numerous tattoos, association with other members of the Pinedale Bulldogs, and identification as a gang member by two reliable sources. Gates also was of the opinion that [Petitioner] was a Pinedale Bulldog. [Petitioner] had several tattoos specific to the Pinedale Bulldogs; he was known to associate with Pinedale Bulldog gang members; he self-admitted being a Pinedale Bulldog on two occasions; and he was identified as a gang member by a reliable source. Gates also testified that two other people, Victor and Adrian Baeza, were members of the Pinedale Bulldogs and both had prior convictions for burglary.

According to Gates, intimidation and respect are everything for a gang. Gangs use intimidation to intimidate rivals as well as a community. This makes it easier to commit crimes within a neighborhood because the community is reluctant to report crimes to the police. Gates testified that weapons generate respect, intimidating the community and making it less likely that rival gangs will confront the gang.

Gates further testified that it is beneficial for gangs to fight on a public street, as this intimidates the community and reinforces the idea that the gang will resort to violence. Personal disputes of one gang member can involve the entire gang because it is important for gang members to support each other. Rubio and [Petitioner] are cousins.

Gates reviewed police reports of the incident involving Michael and Luis. He opined that the assault benefitted the Pinedale Bulldogs. The incident occurring in the open enhanced the reputation of the Pinedale Bulldogs in the community and created further fear and intimidation throughout the community. That Rubio and [Petitioner] carried weapons sent a message to the community that the gang was violent and not afraid

to use firearms. Based upon the reports, Gates determined that the incident between Michael and [Petitioner] came about because of an ex-girlfriend of [Petitioner]'s, whom Michael was dating.

The jury convicted Rubio of two counts of being a felon in possession of a firearm and three counts of assault with a firearm. As to three of the counts, the jury also found true that Rubio personally used a firearm. In a bifurcated proceeding, the jury found true that Rubio committed three of the offenses in association with a criminal street gang, within the meaning of Penal Code section 186.22, subdivision (b)(1).[FN3] Rubio was sentenced to a total term of 20 years 4 months.

FN3. All further statutory references are to the Penal Code unless otherwise specified.

The jury convicted [Petitioner] of assault with a firearm and being a felon in possession of a firearm. The jury also found true that [Petitioner] personally used a firearm in the commission of the assault. [Petitioner] admitted his prior strike conviction. In the bifurcated proceeding, the jury found true the criminal street gang enhancement.

(See Lodged Doc. No. 4.)

## DISCUSSION

I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lockyer v. Andrade, 538 U.S. 63, 70 (2003); Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008 (1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II. Standard of Review

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, __ U.S. __, __, 131 S.Ct 770, 784, 178 L.Ed.2d 624 (2011); Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir.2009), *quoting* Wright v. Van Patten, 552 U.S. 120, 125 (2008); see Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. Carey, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of," [the] clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if

the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405, *quoting* Webster's Third New International Dictionary 495 (1976). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir.2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75-76. The writ may issue only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington, 131 S.Ct. at 784. In other words, so long as fairminded jurists could disagree on the correctness of the state courts decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See LaJoie v. Thompson, 217 F.3d 663, 669 (9th

Cir.2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires considerable deference to the state courts. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," and "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v. Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003), *citing* 28 U.S.C. § 2254(e)(1). However, a state court factual finding is not entitled to deference if the relevant state court record is unavailable for the federal court to review. Townsend v. Sain, 372 U.S. 293, 319 (1963), *overruled by,* Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).

III. Review of Claims

A. Ineffective Assistance of Counsel - Failure to Oppose Consolidation

Petitioner claims he received ineffective assistance of counsel when defense counsel failed to oppose the prosecution's motion to consolidate Petitioner's case with his co-defendant Reynaldo Rubio. Petitioner contends that misjoinder resulted from counsel's failure and that said misjoinder prejudiced him so greatly that he was denied his right to a fair trial. Respondent contends the California courts' rejection of the claim was neither contrary to, nor an unreasonable application of, federal law as determined by the United States Supreme Court.

*1. Background*[3]

On May 5, 2004, Petitioner and co-defendant Reynaldo Rubio ("Rubio") were jointly charged with multiple felony offenses stemming from the attack on Michael and Luis Rios on September 3, 2009. Petitioner was charged with attempted murder of Michael Rios (Count 1), Petitioner and Rubio were jointly charged with two counts of assault with a firearm (Counts 2 and 3), and Petitioner and Rubio were separately charged with possessions of a firearm by a felon (Counts 4 and 5). Firearm, great-bodily-injury, and sentencing enhancements were also charged as to both defendants; however, no gang enhancement was alleged.

[3]These facts are derived from the parties' recitation of the procedural background and the Clerk's Transcript on Appeal, and they are not subject to dispute.

In a separate case, Rubio was charged with felony assault charges based on two separate attacks occurring on May 25, 2003, and July 7, 2003. Petitioner was not involved or charged in those cases.

On November 3, 2004, the prosecutor filed a motion to join Petitioner's case with Rubio's based on his representation that he intended to file gang enhancement allegations (Cal. Penal Code § 186.22(b)) in those cases and the evidence concerning the enhancement would be cross-admissible. The motion to consolidate was heard and granted on January 12, 2005. Petitioner, through his attorney, did not object.

On June 20, 2005, the prosecutor filed a nine-count second amended information charging Petitioner with the following crimes relating to the September 9, 2003, attack on Michael and Luis Rios: 1) attempted murder (Count 1); 2) possession of a firearm by a felon (Count 2); and, 3) assault with a firearm (Count 4). Firearm, great-bodily-injury, and sentencing enhancements were also alleged. Additionally, it was alleged as to all counts that Petitioner committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members (Cal. Penal Code § 186.22(b)(1)).

The second amended information also charged Rubio with the following crimes: 1) possession of a firearm by a felon (Count 3); 2) two counts of battery with serious bodily injury with respect to the September 9, 2003, attack on Michael and Luis Rios (Counts 4 and 5); 3) battery with serious bodily injury with respect to the July 7, 2003, attack on Roger Clark (Count 6); 4) battery with serious bodily injury with respect to the July 7, 2003, attack on Richard Vasquez (Count 7); 5) assault with a firearm with respect to the May 25, 2003, attack on Jose Breceda (Count 8); and 6) possession of a firearm by a felon (Count 9). As to counts 3 through 9, it was alleged that Rubio committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members (Cal. Penal Code § 186.22(b)(1)). Firearm enhancements were also alleged.

On June 20, 2005, Petitioner and Rubio moved to bifurcate the trial on the gang

enhancements from the trial on the substantive crimes. The trial court granted the motion.

On July 5, 2005, Petitioner was found not guilty of attempted murder (Count 1), but guilty of felon in possession of a firearm (Count 2) and assault with a firearm on Michael Rios (Count 4). The firearm enhancements were also found true. Rubio was found not guilty of the assault on Roger Clark (Count 6), but guilty of felon in possession of a firearm (Count 3), two counts of assault with a firearm related to the September 9, 2003, attack on Michael and Luis Rios (Counts 4 and 5), felon in possession of a firearm with respect to the May 25, 2003, attack on Jose Breceda (renumbered Count 7, formerly Count 8), and assault with a firearm with respect to the May 25, 2003 attack on Jose Breceda (renumbered Count 8, formerly Count 9). Firearm enhancements were also found true as to Rubio.

On July 6, 2005, the trial court granted the prosecution's motion to dismiss the gang enhancements as to the incidents involving Rubio and victims Clark and Breceda (Counts 6 and 8). On the same date, the jury found true the remaining gang enhancements alleged against Petitioner and Rubio with respect to the September 9, 2003, attack on Michael and Luis Rios.

On August 24, 2006, Petitioner filed a motion for new trial and argued, *inter alia*, that he had been prejudiced by the consolidation of his cases with Rubio. The trial court considered and denied the motion. The court explained that normally, gang enhancements are not bifurcated; however, the court ordered bifurcation in this instance because at the commencement of the case the People had not "marshaled all of the foundational material that has to be presented in order to prove the gang statute." (RT[4] 1420, 1434.) At that time, "it would have been so prejudicial to bring all of that in, it may have undermined other portions of the case, other defenses." (RT 1420.) The court pointed out that "[l]ater on" the People did put forth sufficient evidence. (RT 1434.)

On May 18, 2007, Petitioner was sentenced to a total term of 26 years as follows: three years for the assault with deadly weapon conviction (Count 4), doubled to six years due to the "strike" prior; ten years for the firearm use enhancement; and ten years for the gang enhancment.

[4]"RT" refers to the Reporter's Transcript on Appeal.

He was also sentenced to three years for the possession of a firearm conviction (Count 2), doubled to six years due to the "strike," plus three years for the gang enhancement, but that sentence was ordered to be served concurrently. Rubio was sentenced to a term of 20 years and four months.

*2. Analysis of Claim*

Petitioner presented this claim on direct appeal to the Fifth DCA where it was rejected in a reasoned decision. (See Lodged Doc. No. 4.) Petitioner then presented the claim to the California Supreme Court in a petition for review. The petition was denied without comment on February 11, 2009. (See Lodged Doc. No. 6.) When the California Supreme Court's opinion is summary in nature, the Court must "look through" that decision to a court below that has issued a reasoned opinion. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3 (1991). The Fifth DCA analyzed and rejected the claim as follows:

> [Petitioner] contends he received ineffective assistance of counsel because his trial counsel failed to make a motion to sever his case from that of his codefendant, Rubio. [Petitioner] argues that such a motion would have been granted.
>
> [Petitioner] bears the burden of establishing inadequate assistance of counsel. (*People v. Pope* (1979) 23 Cal.3d 412, 425 (*Pope*), overruled on other grounds in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10 (*Berryman*), overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.) To succeed here the appellate record must make it clear that the challenged omission was a "mistake beyond the range of reasonable competence. [Citations.]" (*People v. Montiel* (1993) 5 Cal.4th 877, 911.) To prevail, [Petitioner] must show: "(1) trial counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates and (2) it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings. [Citations.]" (*People v. Duncan* (1991) 53 Cal.3d 955, 966.)
>
> Once this burden is met, "the appellate court must look to see if the record contains any explanation for the challenged aspect of representation" such as an "informed tactical choice" by counsel. (*Pope, supra,* 23 Cal.3d at p. 425.) "Where the record does not illuminate the basis for the challenged acts or omissions [of counsel], a claim of ineffective assistance is more appropriately made in a petition for habeas corpus." (*Id.* at p. 426.)
>
> In the instant case, the record does not show why [Petitioner]'s trial counsel did not file a motion to sever. Nor is there any indication that counsel was asked to explain this omission. It is entirely possible, however, that trial counsel determined that such a motion had no merit. As [Petitioner] has not overcome the presumption that the challenged conduct was part of trial counsel's strategy, we cannot assume counsel was incompetent. On this record, we cannot say counsel's performance was deficient.
>
> Even assuming competent counsel would have moved to sever the cases, [Petitioner] fails to show prejudice, i.e., that the motion would have been granted. Section

> 1098, in pertinent part, provides that "When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order separate trials."
>
> "The matter of granting separate trials nevertheless remains largely within the discretion of the trial court [citation], guided by the principles set out in *People v. Massie* (1967) 66 Cal.2d 899. The court should separate the trial of codefendants 'in the face of an incriminating confession, prejudicial association with codefendants, likely confusion resulting from evidence on multiple counts, conflicting defenses, or the possibility that at a separate trial a codefendant would give exonerating testimony.' [Citation.]" (*People v. Turner* (1984) 37 Cal.3d 302, 312, overruled on another point in *People v. Anderson* (1987) 43 Cal.3d 1104, 1149-1150.)
>
> [Petitioner] and Rubio initially were to be tried separately. The People moved to consolidate and the trial court granted the motion. In part, the People moved to consolidate because the evidence in support of the charged offenses against both Rubio and [Petitioner] would be cross-admissible to establish the elements of the gang enhancement. [Petitioner] did not oppose the motion.
>
> Later, when [Petitioner] sought a new trial claiming he was prejudiced by the consolidation, the trial court stated, "All of that evidence would have come in either way." The Legislature has expressed a preference for joint trial of jointly charged defendants, and the advantages of such a trial do not justify severance of an otherwise proper joint trial. (*People v. Freeman* (1994) 8 Cal.4th 450, 496.)
>
> [Petitioner] has not shown that failure to move for severance was ineffective assistance, or that the filing of such a motion would have been successful. (*People v. Grant* (1988) 45 Cal.3d 829, 864-865.)

(See Lodged Doc. No. 4.)

The law governing ineffective assistance of counsel claims is clearly established. Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Harrington v. Richter, *supra*, 131 S.Ct. at 787; Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Harrington, 131 S.Ct. at 787, *citing*, Strickland, 466 U.S. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Petitioner must show that counsel's errors were so egregious as to deprive defendant

of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. Judicial scrutiny of counsel's performance is highly deferential. A court indulges a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington, 131 S.Ct. at 787, *quoting*, Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate prejudice, that is, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," Strickland, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Harrington, 131 S.Ct. at 787, *quoting*, Strickland, 466 U.S. at 693. "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington, 131 S.Ct. at 787-788, *quoting*, Strickland, 466 U.S. at 687. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

Establishing that a state court's application of Strickland was unreasonable under 28 U.S.C. § 2254(d) is very difficult. Harrington, 131 S.Ct. at 788. Since the standards created by Strickland and § 2254(d) are both 'highly deferential,' when the two are applied in tandem, review is 'doubly' so. Harrington, 131 S.Ct. at 788, *quoting*, Knowles v. Mirzayance, 556 U.S. 111, ___, 129 S.Ct. 1411, 1420 (2009).

In this case, Petitioner complains that his defense counsel failed to oppose the prosecutor's motion to consolidate his case with those of Rubio. He claims that by doing so, the prosecution was able to join a weak case with a stronger case and inflame the jury against Petitioner with evidence of his co-defendant's other crimes and gang activity. He contends that any competent attorney would have argued strongly against consolidation, and that such argument would have been successful. Petitioner's contentions are not persuasive.

First, the evidence against Rubio with respect to the two separate incidents was no stronger than the evidence against Petitioner in the September, 2003 incident. Indeed, Rubio was

acquitted in one of the two other cases. As to the September, 2003 incident, as Respondent correctly states, there was substantial evidence that Petitioner committed the assault on Michael Rios. Luis Rios testified he knew Petitioner prior to the attack. (RT 359-360.) He further testified that Petitioner was the person who assaulted Michael Rios with a firearm. (RT 364-367, 371-372.) He had also previously identified Petitioner to investigators from a photo lineup. (RT 490.) A police officer testified that Luis Rios had told him that Petitioner pointed a gun at Michael Rios and informed him he was going to kill him. (RT 511.) The officer stated that Luis then watched as Michael Rios and Petitioner struggled, and as the struggle started to break up and the two began to separate, Petitioner fired the gun at the side of Michael Rios' head. (RT 512-13.) A bystander also witnessed the gun being fired. (RT 526.) There was evidence that Petitioner later called Luis Rios crying and apologizing for "shooting the gun," and stating "he didn't mean for it to happen." (RT 514-515, 518.) These facts provided fairly overwhelming evidence demonstrating that Petitioner had assaulted Michael Rios with a firearm.

Respondent also correctly notes that Petitioner was not found guilty of attempted murder or attempted voluntary manslaughter as charged. This demonstrates the jury carefully weighed the evidence and did not convict Petitioner of all charged offenses as a result of becoming inflamed due to his association with Rubio. Therefore, Petitioner fails to establish that counsel erred by failing to oppose consolidation.

Moreover, even if defense counsel's failure to oppose consolidation constitutes error, Petitioner fails to show that he suffered prejudice, that is, a reasonable probability the result would have been different. When the prosecutor moved to consolidate, he stated joinder was necessary because gang enhancements were being filed with all charges and that evidence therefore would be cross-admissible. Review of the record of the hearing reveals that had counsel opposed the motion, there is little doubt the motion would still have been granted at that time. As Petitioner and Respondent note, "[j]oint trials are favored because they 'promote economy and efficiency'" and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." People v. Coffman, 34 Cal.4th 1, 40 (2004). Cal. Penal Code § 1098 provides, in pertinent part: "When two or more defendants are jointly charged with any public

offense, whether felony or misdemeanor, they must be tried jointly, unless the court orders separate trials." Factors that would ordinarily support a severance were not present, such as incriminating confessions, confusion, conflicting defenses, or exonerating testimony. See People v. Champion, 9 Cal.4th 879, 904 (1995), *quoting* People v. Turner, 37 Cal.3d 302, 312 (1984). Petitioner argues that his association with Rubio was cause for severance because it could unduly inflame the jury against Petitioner. However, as stated by the trial judge, "[a]ll of that evidence would have come in either way." (RT 1434.) It is true that bifurcation of the gang enhancements did occur, but that bifurcation only occurred later when it became apparent that the gang evidence in the court's view was tenuous. (RT 170-171.) As of the time the motion for joinder was heard, that was not the case.

Petitioner fails to show counsel was ineffective, or that the alleged ineffectiveness prejudiced him in any way. In light of the record, Petitioner fails to demonstrate that the appellate court's rejection of his claim of ineffective assistance of counsel was contrary to or an unreasonable application of the Strickland standard. The claim should be rejected.

B. Ineffective Assistance of Counsel - Failure to Move for Severance

Petitioner next claims he received ineffective assistance of counsel when defense counsel failed to move for severance after the trial on the gang enhancements was bifurcated. He claims he was unduly prejudiced by the admission of Rubio's gang affiliation, gang conduct and gang tattoos.

*1. Exhaustion*

Respondent correctly argues that this issue is unexhausted insofar as Petitioner did not raise the claim on direct appeal before the Fifth DCA or the California Supreme Court. (See Lodged Docs. Nos. 1, 3, and 5.)

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d

1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

In his direct appeal, Petitioner claimed that defense counsel rendered ineffective assistance by failing to oppose the prosecution's motion for consolidation. He did not, however, allege that counsel rendered ineffective assistance by failing to move for a severance in the bifurcated trial ordered by the trial court on the gang enhancements. Therefore, this claim is unexhausted and subject to dismissal. See 28 U.S.C. § 2254(b).

*2. Review of Claim*

The Court will address the claim, nevertheless, as it is without merit. See 28 U.S.C. § 2254(b)(2) (providing that a court may deny a petition on the merits notwithstanding a failure to exhaust). As recited above, to establish ineffective assistance of counsel, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. Second, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." Id. at 694. In this case, Petitioner fails to establish either prong.

Like Petitioner's first claim of ineffective assistance, the record does not reveal why counsel did not move for a severance. The appellate court noted with respect to the first claim of error that "[i]t is entirely possible . . . that trial counsel determined that such a motion had no merit." (See Lodged Doc. No. 4.) The same rationale holds true with this claim. The question is whether counsel's "representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington, 131 S.Ct. at 788, *quoting*, Strickland, 466 U.S. at 690. On federal habeas review, "[t]he question is

whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S.Ct. at 788. As discussed below, since a motion for severance in all likelihood would have been denied, Petitioner fails to demonstrate that the state court's conclusion was unreasonable.

Petitioner also has not demonstrated prejudice, that is, that the trial court would have granted a motion for severance had counsel moved for one. The trial court granted the prosecutor's motion to dismiss the gang enhancement charges as to Rubio's separate charges. Therefore, the bifurcated trial proceeded only on the gang enhancement charges against Petitioner and Rubio as to the September, 2003, assault on Michael and Luis Rios. As Respondent correctly states, the jury was not asked to determine whether Rubio's separate assault on Breceda was gang-related. Therefore, Petitioner's reasoning for a severance, that he would be prejudiced by gang-related evidence as to Rubio's separate offenses, was no longer an issue. In any case, the trial court observed in its denial of Petitioner's motion for new trial that Rubio's assault on Breceda could be considered a predicate crime and "[a]ll of that evidence would have come in either way." (RT 1434-1435.)

Petitioner fails to demonstrate that counsel rendered ineffective assistance, or that counsel's alleged failures prejudiced Petitioner. In sum, the claim fails. Although it is subject to dismissal for failure to exhaust, the claim will be denied on the merits for the reasons stated above. See 28 U.S.C. § 2254(b)(2).

**CERTIFICATE OF APPEALABILITY**

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the

validity of such person's detention pending removal proceedings.

> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

///

///

///

///

///

///

///

**ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) The petitioner for writ of habeas corpus is DENIED WITH PREJUDICE;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated:** **November 21, 2011**

/s/ **Barbara A. McAuliffe**
UNITED STATES MAGISTRATE JUDGE